**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Federal Deposit Insurance Corporation, ) | CASE NO. 1:12 CV 2969 |
| ) | |
| Plaintiff, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| vs. ) | |
| ) | |
| Frontier Financial, Inc., et al., ) | **Memorandum of Opinion and Order** |
| ) | |
| Defendant. ) | |

### Introduction

This matter is before the Court upon Defendant St. Louis Title, LLC's Motion to Dismiss for Want of Personal Jurisdiction, Improper Venue, and Because the Complaint Fails to State a Claim Upon Which Relief Can Be Granted (Doc. 19). This is an action brought by the receiver of a failed bank to recover losses it incurred arising out of a defaulted mortgage loan. For the following reasons, the motion is granted as to lack of personal jurisdiction.

### Facts

Plaintiff Federal Deposit Insurance Corporation (FDIC or plaintiff) as Receiver for AmTrust Bank filed its First Amended Complaint against defendants Frontier Financial, Inc., St. Louis Title, LLC, and Titan Mortgage, LLC. In general, the First Amended Complaint

1

alleges the following.

FDIC is a corporation organized and existing under the laws of the United States, and it is authorized to be appointed as receiver for failed insured depository institutions under the Federal Deposit Insurance Act. In that capacity, it was appointed receiver for AmTrust Bank, a closed federally chartered savings bank, and succeeded to the latter's claims.

AmTrust, whose principal place of business is in Cleveland, Ohio, focused a core portion of its business on mortgage banking. In March 2007, AmTrust entered into a Master Correspondent Loan Purchase Agreement (the Loan Purchase Agreement) with Community Lending Services, Inc. (hereafter, CLS), not a party herein, that governed the sale and transfer of mortgage loans to AmTrust by CLS. The Loan Purchase Agreement incorporated the terms and conditions set forth in AmTrust's Seller's Guide (hereafter, the Guide). Together, these two documents provided the terms by which CLS agreed to submit mortgage loans to AmTrust, and CLS represented that all information contained in loan packages submitted by it to AmTrust was complete, true, and correct. Defendants Frontier Financial, Inc. and Titan Mortgage, LLC are the successors in interest to CLS.

The Loan Purchase Agreement states, "The parties hereby consent and submit themselves to the jurisdiction and venue in any State or Federal court located in the City of Cleveland, Ohio..." (Doc. 13 ¶ 9.13)

In 2007, CLS submitted to AmTrust a loan application for the purpose of securing financing from AmTrust for an Illinois borrower's purchase of property located in Missouri. Based upon the materials submitted by CLS, AmTrust financed the borrower's purchase of the property with a mortgage loan. The information submitted by CLS was not complete,

2

true, and accurate. In particular, the true purchase price of the property was misrepresented, and AmTrust's loan was grossly inflated. Additionally, AmTrust was made to believe that the borrower would pay the property seller the remaining 25% of the purchase price (i.e., $200,000) to close the transaction, but that amount was purportedly paid to a fictitious individual who was actually the borrower's husband (an employee of CLS). As a result of the misrepresentations, the Loan Purchase Agreement and Guide required CLS to repurchase the loan and indemnify AmTrust for losses which it failed to do. The borrower defaulted on the loan soon after funding, and AmTrust incurred a substantial loss as a result.

St. Louis Title, a Missouri company with its principal place of business in Missouri, performed closing and escrow services in connection with this mortgage loan transaction. St. Louis Title was required to forward the original closing package to AmTrust in Cleveland, and to send the final loan policy and recorded mortgage to AmTrust in Cleveland. It forwarded the documents as agreed.

AmTrust provided St. Louis Title with detailed written closing instructions and related documents for the subject transaction (the Closing Instructions). St. Louis Title had no authority to close the subject mortgage loan transaction or disburse AmTrust's funds unless St. Louis Title fully complied with all of the Closing Instructions. The Closing Instructions required St. Louis Title to certify that all closing conditions stipulated to in the Instructions were satisfied by St. Louis Title prior to disbursement of AmTrust's funds. Supplemental Closing Instructions were also provided, as discussed below.

St. Louis Title's closing file contains documents showing that the purchase price had been misrepresented to AmTrust. As such, the HUD-1 prepared by St. Louis Title, and

3

forwarded by it to AmTrust, contained misrepresentations regarding the subject transaction. St. Louis Title's disbursement to the fictitious entity was not authorized under AmTrust's Closing Instructions.

St. Louis Title failed to comply with the Closing Instructions in closing the transaction without notifying AmTrust of matters outlined in the First Amended Complaint and, consequently, St. Louis Title was not authorized to close the loan.

As to St. Louis Title, the First Amended Complaint sets forth three claims: breach of contract, negligence, and negligent misrepresentation.

This matter is now before the Court upon Defendant St. Louis Title, LLC's Motion to Dismiss for Want of Personal Jurisdiction, Improper Venue, and Because the Complaint Fails to State a Claim Upon Which Relief Can Be Granted.

**(1) Personal Jurisdiction**

**Standard of Review**

Plaintiff bears the burden of demonstrating that personal jurisdiction exists. When the court does not hear evidence, but rules on written submissions alone, the burden consists of a prima facie showing. *Schneider v. Hardesty*, 669 F.3d 693 (6th Cir. 2012).  Where the court relies solely on written submissions and affidavits to resolve the motion, "the plaintiff's burden is relatively slight." *Estate of Thomson v. Toyota Motor Corp.,* 545 F.3d 357 (6th Cir. 2008) (internal quotations and citations omitted).  "The pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal." *Id.*

A two-step analysis is applied wherein plaintiff must demonstrate that both Ohio's

4

long-arm statute and due process are satisfied. *Schneider v. Hardesty*, 669 F.3d 693 (6th Cir. 2012).

Ohio's long-arm statute establishes a statutory basis for jurisdiction over foreign defendants, and states in part: "(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state; (2) contracting to supply services or goods in this state..." O.R.C. § 2307.382(A).

Due process requires that a defendant have minimum contacts with the forum State such that he should reasonably anticipate being haled into court there. As a general rule, some act is required by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.  There are two forms of personal jurisdiction: general and specific.  "General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant. Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state."  *Miller v. AXA Winterthur Ins. Co.,* 694 F.3d 675 (6th Cir. 2012) (citations omitted).

**Discussion**

St. Louis Title argues that this Court lacks specific personal jurisdiction over it. Defendant only addresses the due process prong of the analysis, and does not address whether Ohio's long arm statute is satisfied.  The Court agrees with plaintiff, therefore, that defendant has conceded that jurisdiction under the Ohio statute is satisfied.

5

The Court turns to whether it has specific jurisdiction over St. Louis Title under the Due Process Clause. For specific jurisdiction to exist, the defendant must have certain minimum contacts with the forum state, an analysis resolved by a three-part test. "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Miller v. AXA Winterthur Ins. Co.,* 694 F.3d 675 (6th Cir. 2012) (citations omitted).

**(a) Purposeful Availment**

Purposeful availment requires a showing that defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state. It protects a defendant from being haled into a jurisdiction for random, fortuitous, or attenuated contacts. *Harris v. Lloyds TSB Bank, PLC* 281 Fed.Appx. 489 (6th Cir. 2008). (internal quotations and citations omitted). This first prong is the "sine qua non for in personam jurisdiction." *Air Products and Controls, Inc. v. Safetech Intern., Inc*., 503 F.3d 544 (6th Cir. 2007) (citations omitted).

Defendant argues that the First Amended Complaint's allegations regarding the relationship between it and AmTrust are based solely on the Master Closing Instructions and Supplemental Closing Instructions. (Doc. 19 Exs. 1 and 2) But, these documents, defendant asserts, identify the lender as CLS and, therefore, St. Louis Title was acting as closing agent for that entity and not AmTrust. In particular, defendant points to the Master Closing

6

Instructions which state, "These Master Closing Instructions, issued by the Lender identified in the Supplemental Closing Instructions..." The Supplemental Closing Instructions expressly identify the lender as CLS. (*Id.*) Defendant asserts that the sections of the Master Closing Instructions which plaintiff quotes in the First Amended Complaint actually provide instructions from CLS to St. Louis Title, both Missouri entities. Defendant further contends that the only allegation concerning a connection between it and Ohio is the mailing of the closing documents, an act insufficient to create personal jurisdiction.

Plaintiff contends that the Closing Instructions "came from" AmTrust and, if there were a doubt, it must be resolved in plaintiff's favor. In support, plaintiff points out that at the bottom of each page of the Master Closing Instructions and Supplemental Closing Instructions it is indicated, "AmTrust Bank Wholesale." Additionally, plaintiff asserts that regardless of whether CLS is defined as the lender in the Supplemental Closing Instructions, the Closing Instructions and actions by St. Louis Title, as discussed immediately below, make it clear that the latter "knew" that the lender was AmTrust, and CLS was only the broker.

The Master Closing Instructions state that St. Louis Title must "provide an Insured Closing Protection Letter, issued to AmTrust Bank... that protects AmTrust Bank from failure to comply with all closing instructions, and from fraud or dishonesty by the Closing Agent." (Doc. 19 Ex. 1 ¶ 2) St. Louis Title provided AmTrust with an Insured Closing Protection Letter, addressed to AmTrust in Cleveland, as submitted by plaintiff with its brief. (Doc. 29 Ex. 2) The Master Closing Instructions also instructed St. Louis Title to wire any rescinded loan proceeds to AmTrust Bank. (*Id.* ¶ 11)

The Supplemental Closing Instructions required St. Louis Title to wire all funds to

7

AmTrust Bank in the event funds were transferred but the transaction failed to close. (Doc. 19 Ex. 2 page 9) The Supplemental Closing Instructions also required St. Louis Title to immediately call AmTrust if it observed payoffs other than to clear title (*Id.* at page 2), and to list AmTrust as the mortgagee on insurance policies. (*Id.* at page 8)

Plaintiff also submits the loan policy countersigned by St. Louis Title which identifies the insured as AmTrust Bank (Doc. 29 Ex. 3), the Deed of Trust recorded by St. Louis Title which states that after recording the document must be returned to AmTrust Bank in Cleveland (*Id.* Ex. 4 at page 14), and the HUD-1 Settlement Statement prepared by St. Louis Title which lists the lender as AmTrust Bank in Cleveland, Ohio. (*Id.* Ex. 5 at page 1)

The First Amended Complaint alleges that after closing, St. Louis Title mailed the closing documents to AmTrust in Cleveland, Ohio. (¶ 41)

The Court agrees with defendant that facts are not established showing that St. Louis Title purposely availed itself of the privilege of doing business in Ohio. St. Louis, a Missouri entity, performed closing services in Missouri for property located in Missouri. The Closing Instructions state that they are issued by a Missouri company to defendant. Thus, defendant would have mailed documents to Ohio based on the Missouri company's instructions. Even if the Court would agree with plaintiff that the evidence shows that AmTrust "prepared" the Closing Instructions, the instructions do specifically identify CLS as the lender and that the lender "issued" the instructions. Even assuming, however, that defendant did enter into the contract (Closing Instructions) with AmTrust (although the contract states otherwise) and mailed the documents to the latter in Ohio, this is insufficient to show purposeful availment.

In *Kerry Steel, Inc. v. Paragon Indust.,* 106 F.3d 147 (6th Cir. 1997), the Sixth Circuit

8

reiterated that "the mere fact that [an out of state defendant] entered into a contract with [an Ohio corporation] does not mean that [the defendant] purposefully availed itself of the benefits and protections of [Ohio] law." Nor does the mere mailing of materials to Ohio create jurisdiction. *Id.* Plaintiff points to *The Scotts Company v. Aventis SA,* 145 Fed.Appx. 109 (6th Cir. 2005), in asserting that where a defendant was aware of the potential damage in the forum state, it should have foreseen that it was causing a consequence there and that it could be haled into court in that state. But in *Scotts,* the contract was negotiated and executed in Ohio, unlike here (there is no allegation of such).

Likewise, in *Miller, supra,* the Sixth Circuit found that a foreign defendant's sending of a letter to plaintiff in the forum state and reaching an agreement as to the letter while both parties were out of the state was insufficient to form a basis for jurisdiction. The court noted that its previous decisions supported its finding. For instance, in *Nationwide Mut. Ins. Co. v. Tryg Intl. Ins.*, 91 F.3d 790 (6th Cir. 1996), due process was not satisfied even though defendant sent a letter to plaintiff's corporate headquarters in Ohio, entered into an agreement with plaintiff, sent an agent to Ohio, solicited business from plaintiff in Ohio, and realized profits from its contacts with Ohio. And, in *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722–24 (6th Cir.2000), "we held that a contract was not sufficient to satisfy due process when none of the terms of the contract was to be performed in the forum state; the fact that a contract existed between the parties but in no way implicated action in the forum state was merely fortuitous."

On the basis of the facts before this Court, plaintiff has not established that St. Louis purposefully availed itself of the privilege of transacting business in Ohio.

9

**(b) Contacts with Ohio**

The Court need not reach the next criterion for establishing personal jurisdiction, as "purposeful availment" is a necessary element. *Oasis Entertainment Complex, Inc. v. Lawrence,* 1999 WL 313852 (6th Cir. May 7, 1999) Even if it did, the Court finds that it is not satisfied.

Defendant contends that the First Amended Complaint alleges liability that is unrelated to its sole contact with Ohio. Essentially, defendant argues that its contact with Ohio in mailing the closing documents is unrelated to the facts that led to the cause of action, namely the wrongful disbursement and closing. Specifically, St. Louis Title points out that its only alleged contact with Ohio is the mailing of the closing documents, but these were sent "as agreed" and without any defect. The First Amended Complaint, on the other hand, alleges that St. Louis Title damaged plaintiff when it wrongly disbursed $123,400 and wrongly closed the loan, AmTrust made the decision to finance the loan based on the loan package previously submitted by CLS, and the funds were disbursed prior to the mailing of the closing documents. Therefore, defendant maintains that the act of mailing the closing packet to Ohio did not cause the earlier disbursement of funds in Missouri.

Again, plaintiff relies on *Scotts Co. v. Aventis SA,* 145 Fed.Appx. 109 (6th Cir. 2005) (citations omitted), in pointing out that while the cause of action must arise out of defendant's activities in Ohio, "[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contract." A "lenient standard" applies in evaluating this criterion. *Id.* On this basis, plaintiff maintains, defendant cannot attempt to limit jurisdiction to claims based purely on

10

the mailing of the documents to Ohio, but the fact that defendant's misconduct arose from its transaction of business with AmTrust is sufficient.  Additionally, plaintiff asserts, even under defendant's strained interpretation, the claims are related to defendant's conduct with Ohio given that several of the documents mailed here contained the misrepresentations of which plaintiff complains.

Assuming that the Closing Instructions constituted a contract between defendant and AmTrust, the cause of action must have a "substantial connection with the defendant's in-state activities." *Scotts,* 145 Fed. Appx. at 115.  But, the contract alone is insufficient to create jurisdiction.  While plaintiff maintains that documents mailed to Ohio by St. Louis contained the misrepresentations upon which the claims are based, defendant points out that the approval and closing of the loan as well as the disbursement of the funds occurred before the mailing of the closing documents and, therefore, the act of mailing the closing packet did not cause the disbursement of the funds.

**(c) reasonableness**

An inference arises that the third factor is satisfied only if the first two requirements are met. *Bird v. Parsons,* 289 F.3d 865 (6th Cir. 2002) (citations omitted).  "Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Third Nat. Bank in Nashville v. Wedge Group, Inc.,* 882 F.2d 1087 (6th Cir. 1989) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)). Several factors have been identified as relevant to the reasonableness inquiry, "including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining

11

relief, and the interest of other states in securing the most efficient resolution of controversies." *Bird,* 289 F.3d at 875.

St. Louis Title asserts that it would be burdened if forced to litigate in Ohio given that it has no branches, offices, or employees here. Additionally, Ohio has little interest in the case given that AmTrust is closed, and the FDIC is not an Ohio corporation. Finally, defendant contends that Missouri law governs the dispute because it has the most significant relationship given that CLS and St. Louis are Missouri residents and the transaction involves Missouri property.

Plaintiff disagrees that defendant would be burdened given that it has Ohio counsel and local rules allow telephonic or video conferencing. Nor will all the evidence and witnesses be located in Missouri given that defendant Titan Mortgage is located in Texas and the borrower is in Illinois.

Given that the first two requirements of specific jurisdiction are not met, it would be unreasonable to exercise jurisdiction over defendant.

For these reasons, the Court lacks specific jurisdiction over defendant. General jurisdiction requires continuous and systematic contact with Ohio which has not been shown to exist here. Plaintiff briefly asserts that discovery may reveal such contact given that defendant advertises on its website that it specializes in the "National coordination of multi-site and multi-state transactions," and one client, who currently has Ohio multi-site properties for sale, states in a testimonial that he utilizes defendant's services for all of his multi-family transactions nationwide. The Court agrees with defendant that this fails to support a prima facie showing that defendant regularly conducts business in Ohio. Regardless, defendant

12

submits an affidavit of its Manager who avers that defendant has no offices or employees in Ohio, has never actively solicited business here, and has never issued a title insurance policy on Ohio real estate.

For these reasons, defendant's motion is granted as to the issue of personal jurisdiction, and the Court need not proceed to the remaining bases set forth in the motion.

### **Conclusion**

For the foregoing reasons, Defendant St. Louis Title, LLC's Motion to Dismiss for Want of Personal Jurisdiction, Improper Venue, and Because the Complaint Fails to State a Claim Upon Which Relief Can Be Granted is granted as to lack of personal jurisdiction.

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 5/29/13